**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DONNIE D. WHITE, #B-31317,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 11-cv-543-JPG** |
| | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **CORRECTIONS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**GILBERT, District Judge:**

Plaintiff Donnie D. White, an inmate in Tamms Correctional Center ("Tamms"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  Plaintiff is serving a three year sentence for arson, along with three years for a drug offense, six years for possession of contraband in a penal institution, and a total of nine years for three convictions for aggravated battery of a peace officer.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  Although the Court is obligated to accept factual allegations as

true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so

sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate

abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id*.  At

the same time, however, the factual allegations of a pro se complaint are to be liberally

construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it

appropriate to exercise its authority under § 1915A; portions of this action are subject to

summary dismissal.

## The Complaint

Plaintiff names a total of ninety-one (91) Defendants[1] in his complaint, in addition to the

Unknown Party Defendants.  He asserts claims of deliberate indifference to his mental health

needs, discrimination against him in violation of the Americans With Disabilities Act ("ADA"),

violation of Section 504 of the Rehabilitation Act, and retaliation.  He also has attached

---

[1] Defendant Kenneth Bartley (Doc. 7, p. 7) was inadvertently omitted from the list of Defendants on the Court's docket sheet.  The Clerk shall be directed to add this Defendant.

approximately 200 pages of exhibits, including mental health treatment records, grievances, news articles, and his own writings (Docs. 7-1 through 7-10).

Plaintiff claims to be suffering from bipolar disorder, schizophrenia, and suicidal thoughts, ideation and gestures (Doc. 7, p. 12).  He asserts that instead of receiving appropriate treatment for his serious mental disorders, he has been placed in a restraint chair, restrained in a bed for three to four days at a time in cold conditions without clothing or food, placed in a concrete "strip cell" for weeks at a time, fed "meal loaf" after engaging in self-mutilation, denied contact with family and friends, and subjected to other unspecified "oppressive treatment" when having a psychological crisis (Doc. 7, p. 11).  Further, he claims that during his stay at Tamms, Defendants have falsified his medical and mental health records to state that nothing is wrong with him.  They have refused to accommodate his need for mental health treatment by failing to either place him in the psychiatric unit at Tamms or transfer him out of Tamms to another facility where he can receive mental health services (Doc. 7, pp. 12-13).  He claims he has not received adequate mental health treatment while at Tamms.

Finally, Plaintiff claims that ten of the named Defendants retaliated against him for writing a complaint to the Office of Inmate Issues in Springfield, Illinois, and for pursuing a lawsuit in the Central District of Illinois against several Tamms officials (Doc. 7, pp. 14-16). This retaliation included placing and keeping Plaintiff on suicide watch, withholding medical treatment, and refusing to provide him with finger foods while he was on suicide crisis watch.

Plaintiff seeks declaratory and injunctive relief, as well as damages.

## Discussion

Based on the allegations of the complaint, the Court finds it convenient to divide the pro

se action into four (4) counts, corresponding to those in Plaintiff's complaint.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Deliberate Indifference to Mental Health Needs**

Plaintiff alleges that he is "one of numerous mentally ill inmates" incarcerated at Tamms (Doc. 7, p. 11).  He asserts that the "extremely restrictive measures and conditions" at Tamms "exacerbate his serious mental illness," and the mental health treatment given to him is "more akin to punishment."  *Id.*  Although he lists several conditions and/or consequences to which he has been subjected, nowhere does he state which of the ninety-one Defendants imposed any of these conditions on him.  Nor does he indicate the dates of occurrence or even a general time frame for any of the incidents.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Additionally, the Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need."  *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).  *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983).  Deliberate indifference encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition."  *Estelle,* 429 U.S. at 106.  *See also Sanville v. McCaughtry,* 266 F.3d 724,

734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that

this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the

denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless

disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000).

The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary

malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

*See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328,

331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's

judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended

the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293

F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

The initial component of a deliberate indifference claim is that the prisoner must have an objectively serious medical condition.  Although Plaintiff asserts that he suffers from bipolar disorder and schizophrenia, his voluminous medical records do not show that he has been diagnosed with either condition.  He appears to base his claim on an alleged statement made by one or more unidentified Tamms official(s) that "95% of Tamms inmate population has an accurate mental health diagnosis of bipolar disorder and schizophrenia" (Doc. 7, p. 12).  The document containing this alleged statement, which Plaintiff included as an exhibit, actually reads: "Staff said schizophrenia and bipolar disorder are the most common mental health problems.  They said that probably 95 percent of the Tamms population suffers from a diagnosable psychiatric problem."[2]  Plaintiff's self-diagnosis based on these remarks is mere speculation and is not sufficient to indicate that he suffers from these serious mental disorders.

Furthermore, the most recent mental health records (other than two pages from 2010 and 2011; Doc. 7-3, pp. 2-3) submitted by Plaintiff date back to 2007.  His mental health evaluation dated August 4, 2004, states that Plaintiff's treatment plan was discontinued at that time, "due to his unwillingness to work on agreed-upon goals" (Doc. 7-4, p. 7).  According to this document and other notes from various prison mental health providers, Plaintiff's diagnosis was "antisocial personality disorder."  Defendants Peppers and Rhodes-Bushur observed that although Plaintiff had in the past been diagnosed at times with serious mental illness,[3] his inappropriate behaviors in 2004 were not due to a mental illness, but were a function of his antisocial personality disorder

---

[2] John Howard Association of Illinois, Monitoring Tour of Tamms Supermax Prison, Nov. 9, 2010.  (Doc. 7-6, p. 28).

[3] For example, major depression with psychotic features, in July 1998 (Doc. 7-3, pp. 8-14).

(Doc 7-4, pp. 6-7).  Records from 2006 indicate that he was evaluated and given psychotropic medication for insomnia and anxiety (Doc. 7-4, pp. 9-10, 15).  In addition, mental health staff have intervened numerous times in response to Plaintiff's acts of self-harm or reports of urges to kill or injure himself (Doc. 7-2, pp. 10-14, 18-19, 24-29; Doc. 7-3, pp. 25-27; Doc. 7-4, pp. 1-2; Doc. 7-8, pp. 2-13; Doc. 7-9, pp. 11-12; Doc. 7-10, pp. 5-7).

Plaintiff asserts in his complaint that Defendants have "falsified" his records to say that nothing is wrong with him and that he is a malingerer.  However, given the extensive treatment Plaintiff has received over the years from numerous mental health staff, as evidenced by his attached records, the assertion that mental health providers are lying about his condition stretches credulity.  The complaint thus fails to indicate that Plaintiff suffers from either bipolar disorder or schizophrenia.

As for Plaintiff's assertion that he suffers from suicidal ideations, and the documentation that he has antisocial personality disorder, it is possible that these could be considered serious medical conditions.  If so, then Plaintiff must also plead facts to indicate that one or more of the Defendants was deliberately indifferent to his need for treatment of these conditions.  He has failed to do so.

As noted above, Plaintiff had been placed on at least one treatment plan to address his behavior related to his antisocial personality disorder, however, he refused to work on goals in accordance with that plan.  While that treatment plan was discontinued in 2004, Plaintiff continued to have mental health services available to him and was given medication when he requested assistance.  His records also indicate that he was placed on suicide watch when he appeared to be at risk, and/or placed in restraints after cutting himself.  Plaintiff has submitted

numerous copies of grievances filed by him in 2010 and 2011, in which he raised complaints similar to those included in this action.  The staff responses to those grievances state that Plaintiff had been visited by mental health staff on several occasions after he requested services (Doc. 7-8).  Thus, Plaintiff's allegations that he has been denied mental health treatment are not supported by the materials which he has incorporated into his complaint.  Instead, it appears that he is merely dissatisfied with the treatment which has been offered to him.

An inmate's disagreement with a physician's chosen course of his medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin*, 236 F.3d at 898.

The allegations that Plaintiff was placed in restraints for three to four days at a time and denied food and clothing may raise a question as to whether this treatment could have violated the Eighth Amendment.  However, Plaintiff has failed to connect any individual Defendant to these incidents, nor has he provided enough specifics for any Defendant to respond to the allegations.  The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are

required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

To summarize, Plaintiff has failed to state a claim upon which relief may be granted for deliberate indifference to his mental health needs against any of the Defendants.  Accordingly, this count shall be dismissed without prejudice.

**Count 2 - Violation of the Americans With Disabilities Act (ADA)**

In his ADA claim, Plaintiff asserts again that he has a serious mental illness (bipolar disorder, schizophrenia, and suicidal thoughts), and states that Defendants have refused to accommodate this disability and are discriminating against him.  The accommodation he demands is either placement in the Tamms psychiatric unit, or a transfer to a mental health facility, where he can participate in mental health programs, services, and activities afforded to other mentally ill inmates (Doc. 7, pp. 12-13).

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012).  The ADA applies to state prisons, *Penn. Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998).  In order to state a claim under Title II, a plaintiff must allege the following four elements: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), *cert. denied,* 538 U.S. 921 (2003)); *see also*  42 U.S.C. § 12132; *Glick v. Walker,* 272 Fed. App'x 514, 520-21 (7th Cir. 2008); *Hahn v. Walsh,* No. 09-CV-2145, 2009 WL 5215599, at *9 (C.D. Ill. Dec. 29, 2009).

    Notably, the first factor that triggers the applicability of the ADA is that the individual must have a "disability."  While a "mental impairment that substantially limits one or more major life activities" is recognized as a "disability" within the meaning of the ADA, 42 U.S.C. § 12102(1)(A), Plaintiff has not pled facts to indicate that he suffers from such a mental impairment (see Count 1 above).  His conclusion that he suffers from bipolar disorder and schizophrenia is contradicted by the exhibits incorporated into his complaint.  Additionally, based on Plaintiff's complaint, the Court concludes that his "suicidal thoughts" (which have surfaced from time to time and have prompted Tamms staff to respond with treatment and other measures to prevent Plaintiff from harming himself) do not constitute a "disability" as defined by

the ADA.  More to the point, there is nothing to indicate that Plaintiff was denied access to the programs and treatment he desires (admission to the psychiatric unit or a transfer) because of his alleged disability.  To the contrary, it appears that those responsible for making treatment decisions concluded that such placement was not necessary because Plaintiff did *not* have a serious mental illness.  Thus, he cannot maintain a claim for violation of the ADA.

Plaintiff's claim essentially boils down to a disagreement with the mental health-related treatment he has received in Tamms.  As noted in Count 1, an inmate cannot dictate his own treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and his dissatisfaction with the treatment given by prison medical providers will not sustain a civil rights claim.  Nor will it support a claim under the ADA.  Accordingly, this count shall be dismissed without prejudice.

**Count 3 - Violation of Section 504 of the Rehabilitation Act**

Plaintiff states that Defendants have violated the Rehabilitation Act by "sending him to Tamms without providing him adequate mental health treatment" (Doc. 7, p. 13).  He repeats his assertions that he suffers from bipolar disorder, schizophrenia and suicidal ideation, adding that he has auditory hallucinations and major depressive symptoms.  He states that Defendants are "intentionally misdiagnosing him as malingering" and denying him rehabilitative programs and services on account of his disability (Doc. 7, pp. 13-14).  He does not describe which programs and services he has been excluded from as a result of Defendants' alleged actions.

The standards applicable to Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, are the same as those under the ADA; however, to sustain a claim under the Rehabilitation Act, Plaintiff must also prove that he was involved in a program which received federal financial assistance.  *See* 29 U.S.C. § 794(d) (2006); *Jackson v.*

*City of Chicago,* 414 F.3d 806, 810 n.2 (7th Cir. 2005) (citing *Silk v. City of Chicago,* 194 F.3d 788, 798 n.6 (7th Cir. 1999)). In other words, to state a Rehabilitation Act claim under Section 504, Plaintiff must plead the following four elements:  (1) he is handicapped under the Act; (2) he is otherwise qualified for the benefit sought; (3) he was discriminated against solely by reason of his handicap; and (4) the program or activity in question receives federal financial assistance. *See Grzan v. Charter Hosp. of Nw. Ind.,* 104 F.3d 116, 119 (7th Cir. 1997).

As with Plaintiff's ADA claim, his allegations fail to indicate that he suffers from a mental illness so as to be considered a "handicapped individual" entitled to the protections of the Rehabilitation Act.  Likewise, although Plaintiff asserts he is being denied access to programs and services because of his "disability," it is apparent from the complaint that those responsible for his treatment have a different view of Plaintiff's mental condition and of what treatment is most appropriate for him.  To summarize, Plaintiff has failed to state a claim upon which relief may be granted for a violation of Section 504 of the Rehabilitation Act.

**Count 4 - Retaliation**

Plaintiff states that he wrote to Sherry Benton of the Office of Inmate Issues in Springfield to complain about the conditions of his confinement and his treatment by Tamms mental health staff, and filed a lawsuit against a number of Tamms officials (*White v. Jones*, Case No. 07-cv-1311, C.D. Ill., filed Nov. 19, 2007).  He describes several instances of alleged retaliation against him as a result of pursuing his complaints.

First, Plaintiff claims that on May 24, 2011,[4] Defendant Evans informed him that she was

---

[4] Because the other dates provided by Plaintiff in this section are all in the year 2010, the Court will presume that Plaintiff meant to say that this encounter happened on May 24, 2010.

placing Plaintiff on suicide crisis watch because of his letter to Springfield staff, and he should

not have written the letter (Doc. 7, p. 15).  On May 25, 2010, Defendant Murray told Plaintiff

that he was leaving him on suicide watch because of the letter.  On May 26, 2010, Defendant

Blackmon told Plaintiff the same thing.

On May 26, 2010, Defendant Murray told Plaintiff he had "seen that lawsuit you filed

against Wanda and the others.  You're not getting anything." *Id.*

Between May 24 and 28, 2010, Defendants Butler, Medlin, Melton, Leslie, Hamby, and

Kerr told Plaintiff that because of his letter of complaint, these Defendants would not provide

him with any medical treatment while he was on crisis suicide watch, and they would record that

Plaintiff refused treatment.  The Defendants allegedly stated that Plaintiff "better stop writing to

Springfield if [he] knows what's good for [him]" (Doc. 7, p. 15).

From May 24 to May 28, 2010, Defendant Sullivan refused to provide Plaintiff with

finger foods during the time he was on suicide watch, in retaliation for Plaintiff having named

her in the lawsuit.  Another officer told Plaintiff, allegedly at Defendant Sullivan's behest, that

"until you dismiss her she will always make sure something is missing on your meal trays" (Doc.

7, p. 15).

Even though these allegations would likely not be unconstitutional in and of themselves,

if some action was taken against Plaintiff in retaliation for the exercise of a constitutionally

protected right, then he may have a claim under § 1983.  *See Bridges v. Gilbert*, 557 F.3d 541,

552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n

act in retaliation for the exercise of a constitutionally protected right is actionable under Section

1983 even if the act, when taken for different reasons, would have been proper.")); *see also*

*Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

Plaintiff has described several actions that state a cognizable claim for retaliation:  the allegedly retaliatory placement and retention on suicide watch by Defendants Evans, Murray, and Blackmon, and the withholding of food by Defendant Sullivan.  However, in the case of Defendants Butler, Medlin, Melton, Leslie, Hamby, and Kerr, Plaintiff states only that they threatened to withhold medical care from him, not that they carried out their threats or took any other action against him.  The same is true of Defendant Murray's May 26 comment that Plaintiff is "not getting anything."  A mere threat, without some actual deprivation, is not sufficient to give rise to a retaliation claim.  *See Gomez v. Randle*, ___ F.3d ___, 2012 WL 1660975, *6 (7th Cir. 2012) (citing *Bridges v. Gilbert*, and noting that an inmate claiming retaliation must suffer some "deprivation that would likely deter First Amendment activity in the future").  Therefore, Plaintiff's claims against Defendants Butler, Medlin, Melton, Leslie, Hamby, and Kerr shall be dismissed without prejudice.

As to the claims against Defendants Evans, Murray, Blackmon, and Sullivan, the question is whether Plaintiff experienced an adverse action or actions that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges*, 557 F.3d at 551.  This is a matter that cannot be resolved at the pleadings stage of this case.  Therefore, Plaintiff's retaliation claims against Defendants Evans, Murray, Blackmon, and Sullivan shall receive further review.

**Disposition**

The Clerk of Court is **DIRECTED** to add **KENNETH BARTLEY** as a Defendant.

**IT IS HEREBY ORDERED** that **COUNTS 1, 2** and **3** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** without prejudice.  Defendants **ILLINOIS DEPARTMENT of CORRECTIONS, RANDLE, WALKER, TAYLOR, NAVARRO, SHICKER, ELYEA, ANGUS, KALOWOSKI, GARNETT, HARTLINE, OSMAN, HOUSTON, VINYARD, ADAMS, COUCH, DUNN, HAMBRY, KERR, KLEIN, BASKIN, RHODES-BUSHUR, LARRY, MASON, STEVENS, PEPPERS, POWERS, WILLIAMSON, ROBERT C. JONES, LINDA ELLIS, BRYANT ELLIS, RAMSEY, CASTEEL, BONIFIELD, TANNER, ELDERS, MARKEL, MOORE, AHRENS, GUETERSLOH, MEDLIN, HILL, HART, GEORGE, QUALLS, WALKER, BUTLER, HUMBLE, WATSON, LESLIE, BARD, JESSE MONTGOMERY, McCANN, FREY, HINSLEY, LAMBERT, EDDIE JONES, DILLON, JOHNSON, MONTI, HALLAM, ROPER, MARKEL, SMITH, CHANDRA, KHAN, KACHIGIAN, CALIPER, CLOVER, WALTON, SHERRY MONTGOMERY, ROBERTSON, HAMBY, HOOVEN, SIMPSON, SWINK, CASTLE-WATKINS, FISHER, FORNEAR, KWASNIEWSKI, GAYLA SCHAFFER, NATASHA SCHAFFER, JORDAN, MOORE, MELTON, WEXFORD HEALTH SOURCES, INC., UNKNOWN PARTY,** and **BARTLEY** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that as to Plaintiff's retaliation claims in **COUNT 4**, the Clerk of Court shall prepare for Defendants **EVANS, MURRAY, BLACKMON**, and **SULLIVAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons),

and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

       **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

       **IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or  counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

       Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 21, 2012**

*s/J. Phil Gilbert*
**United States District Judge**